May I please the court, Robert Dietrich on behalf of Richard Olive, may I reserve three minutes for rebuttal? Yes. May I start with the Santos issue? The Santos error is per se error, precisely because of what happened in this case. Mr. Olive was punished twice for the same conduct, and there's nothing in the legislative history that suggests that that result was intended. In the legislative history, it makes clear, and I believe this court has recognized it in Cosgrove, that result was intended only for drug crimes. In Santos, Justice Stevens, writing for the plurality, he was the concurring vote, the fifth vote for the majority, indicated that if someone is punished twice for the same conduct, then that is going to be an error that cannot stand. Mr. Olive was punished for count two, 36 months, and count nine for 60 months. Count two included, the part of the fraud was paying a commission to a broker, count nine was the payment to the broker. And for count two and count nine, they match up exactly in terms of the stream of that fraud. John, are you going to talk about our reaction to the Santos case, and let's say in the Crott case, K-R-A-T-T? Sure, I mean the Crott case, I think, indicates one thing that's helpful, which is that 1956 and 1957 are going to be treated the same. To the extent that the government relies on Crott, it fundamentally doesn't apply to this In the Crott case, the defendant was not punished twice for the same conduct. The guidelines were calculated using one of the offense conduct, and the defendant wasn't penalized twice for that same conduct. Is that because of the consecutive sentences here? That is because of the consecutive sentences here. So for this particular case, because of the way the guidelines went, Mr. Olive was given a statutory maximum penalty of 160 years, which used the statutory maximum for both the money fraud and for the fraud charge. So if we agreed with you, which conviction then, which count should be eliminated? I think that the money laundering count has to be eliminated, because that's part of the fraud. The underlying offense should drive this. And that's count nine? No, the count nine is the money laundering offense, yes. So you want the money laundering offense to be eliminated? Yes. And that's the one with 60 months? Yes, Your Honor. If I, I'll then move to the evidentiary issues and the indictment, which I believe entitles Mr. Olive to at least a new trial. The central issue at trial was whether the foundation was a 501c3 entity. In order to prove that to the jury, and it should have been a jury finding, the government relied on certain cease and desist orders issued by state insurance regulatory bodies. Those insurance regulatory bodies had no institutional competence or jurisdiction to determine whether a 501c3 status at all. Nevertheless, the district court admitted those cease and desist orders for only the purpose of showing that Mr. Olive had knowledge or notice that his business was not a 501c3. In doing so, the district court failed both on articulating a proper purpose, because the cease and desist orders don't accomplish knowledge or notice. Didn't they show that he was on notice that there were questions regarding the, the entities? Well, I think that, I think certainly he was on notice that there were questions about the entities. But he had noticed through the IRS process, he was in active negotiations through counsel with the IRS to come to resolution with the only body in the government that had the institutional competence and the jurisdiction to render a final determination in regard to the 501c3 status. When you introduce the state regulatory cease and desist letters, you run two risks. One, you have a conclusion. It's not an allegation, it's a conclusion in these letters that purports to take out of the jury's realm this factual finding of whether it was reasonable for Mr. Olive to believe that he was acting as a 501c3, and you have the danger that the jury will want to penalize Mr. Olive for the alleged regulatory violations. And so we, there's, there's not a proper purpose for the cease and desist letters, and when you do the balancing test, there's, there's no probative value, and the danger of unfair prejudice is, is severe in this case. Why wasn't the limiting instruction enough? The limiting instruction was not enough because the limiting instruction told the jury that they could only consider it for the purpose of, of the 501c3 status. So I suppose you could say that the limiting instruction mitigated some of the harm. Only for notice and, and knowledge and for those kind of limiting purposes. Right, but, but the cease and desist orders don't even accomplish that, is my, is my first argument in that regard, because although I guess it could raise the issue of whether there was a question about whether the foundation was a 501c3, these letters purport to make the conclusion that it was not, and, and I think that it, it impinges upon the jury's function to make that factual determination. I just have a broader question about your emphasis on the 501c3 status. I mean, that was a part of, of the allegations that the government made, but that's not, that's not the essential heart of the offenses charged, but I gather from your emphasis in your brief, the issues you've chosen to press, that to you, that's sort of the beginning and end of the case. Am I reading you wrong, and why should that be so? Well, I think the, the issue comes to fruition, it comes forth a little bit more when you look at the government's response. And the scheme to defraud is much broader than misrepresenting 503c status, right? I think what the government is saying, in fact, is that there are numerous ways that Mr. Olive could have committed this fraud, and then what my, my rejoinder to that is, well, which one did the jury convict on? We don't know. And I think that that issue undermines public confidence in, in the, whether there was unanimity. I mean, in every criminal case in which a scheme to defraud is alleged, it would be a rare thing to have some sort of a, a specialized verdict as opposed to a generalized verdict. And it, we don't go around creating issues that are central to a case by speculating what the jury thought. I mean, that's just not the, the process. I, I think when you look at the evidentiary issue as opposed to the sufficiency of the indictment issue, I think the jury had to come to a conclusion about what the fraud was. And, and I understand what Your Honor is saying, but the reason why the judge should have been meticulous about what evidence was included and what evidence was excluded in this case was so that there wouldn't be a chance that the jury would convict upon a portion of the fraud scheme that could not be fraud as opposed to other portions of the fraud scheme, which might have fairly stated a cause of action. Well, certainly to the extent your client represented that he had in fact attained 501c3 status, that would have been a misrepresentation. It could have been if the jury found that it was. I think the only one at the district court level. He had not in fact attained 501c3 status. All he'd done is file an application, correct? I think that was a jury determination, Your Honor. The Where's the evidence that would permit the I mean, in fact, it was ultimately denied. It was, but as the IRS General Counsel's office has said and as the Tennessee law contemplates and as SEI, the billion-dollar corporation, acted upon, the determination letter is not needed for 501c3 status. All you need to do is file the application and then you take the risk. Churches do this all the time. From the standpoint of the donor to the 501c3 that has applied, the donor is taking the risk to the extent you're the entity attempting to attain 501c3 status, you're not taking a risk. You're holding yourself out as having attained a status that you have not in fact yet attained, correct? No, I think the district court was correct. If you're a 501c3, you're a 501c3. If you're not, you're not. You can file the application and if you are a 501c3, you're a 501c3. If you file an application and you're not a 501c3, then you're not. Well, the government would doubtless rejoin that all the evidence here indicates that your client was not under that reading of things, was not a 501c3. I agree, and I think that was the issue that the jury needed to find. And I think that with the cease and desist orders, I think that's exactly what the cease and desist orders take out of the jury's fact-finding realm, that the cease and desist orders purport to make that conclusion in very intimidating and formalistic ways. If I then can quickly touch on the sentencing issues for the organizer and leader, if the participants to support that, then they would have gotten the jury instruction for aiding and abetting. The standard for... Well, don't... For the organizer or leader of an activity with five or more participants, why wouldn't the four employees count? Because in order to be participants, you have to be criminally culpable. And when they were going through and discussing jury instructions, the government asked for an aiding and abetting instruction. The government asked... But the sentencing is up to the district judge, not to whether or not the jury is asked to find anything. That's true, but if the judge was asked for the instruction and there's a legal basis for the instruction, and I can see that both of those things happen, then the judge has to give the instruction if there's a factual basis for it. The judge found that there was no factual basis that any other person committed a criminal act in this case, and that's why it didn't give the instruction. And if that's the case, then there can't be any participants for there to be an organizer and leader enhancement. And that's in the record somewhere? Do you have a record site for that? I can get that for your honor. I know that the government's proposed instruction... Why would the... Excuse me. Why would the district court be telling a jury that people not on trial didn't have any criminal responsibility? I mean, the court might have said something like, no other person is on trial before you. You're not to concern yourself with whether anybody else did anything wrong or not. But why would you ever be talking about the criminal culpability of people who are not on trial, other than to make sure that the jury didn't consider that, and then by association convict the defendant? If you look at page ID 494, that's the government's proposed instruction on aiding and abetting. The government asked for an instruction as a theory of culpability for Mr. Olive that not only did maybe he commit criminal conduct, but perhaps he aided and abetted the conduct of others. And so that would be an alternative basis upon which the jury could have convicted Mr. Olive. So the government was arguing, even if Mr. Olive didn't directly commit a crime, you still did, and Mr. Olive helped them or encouraged them to commit the crime, and that's a basis that you could hold Mr. Olive culpable at trial. The district court said, who are these other people who committed criminal acts? And the government proposed a whole list of them, and the district court knocked each of them out and said, there's no evidence. So the result of that would be not to instruct the jury on aiding and abetting, which is one less basis for conviction on the part of your client. Well, I agree with you, Your Honor, but I mean, that's not quite what you just said. I mean, the court would never explain, I mean, shouldn't explain to the jury the process through which it went in order not to charge aiding and abetting. I'm not suggesting that the court made an error in not giving the instruction. What I'm suggesting is that if the court found that there was no evidence at trial, that there was another participant, then... How about if the court just didn't find there was sufficient evidence to prove beyond a reasonable doubt? That's not the standard for a jury instruction. The standard for a jury instruction is if there's any evidence, and it's requested, and there's a legal basis. Well, there's got to be evidence from which the jury could find, and could find does not mean a smidgen. But the standard at sentencing is... Right. That's the point. And that's a much higher standard than for a jury instruction. Well, sometimes it depends on what it is. Thank you. Your time is up, and we'll let you have your rebuttal time. Thank you, Your Honor. May it please the court. Cecil Van Devander on behalf of the United States. Let me start briefly with this 501c3 issue, and I'll turn to Santos and the sentencing issues and the evidentiary issues. There's a lot in the appellate briefs and a lot that was just discussed about whether NFOA was actually a 501c3, what happens when an organization has applied for 501c3 status, but hasn't received a determination letter, is a donation from an individual to that organization properly tax deductible during the pendency of the application. I'd suggest that all of that is really neither here nor there. The issue here is that the defendant repeatedly stated that NFOA was recognized by the IRS as a 501c3. It's not that it in some sense was, or that it might someday be, or that it was operating like a 501c3. If you look at every installment plan agreement, right at the top it says that NFOA was, quote, recognized by the IRS as a 501c3. What that means is you've received a determination letter confirming that you are, in fact, approved as a 501c3. That's the problematic representation, and so whether an individual could take a deduction during that period is essentially irrelevant, I would submit. Just very briefly, also on this 501c3- Why is the limiting instruction adequate, then? On the cease and desist letters? On the cease and desist letters, first, they were redacted to take out any of the other grounds for the letters, that is, any findings regarding securities law or other things that weren't related to the 501c3 status. Second, the limiting instruction noted that the jury was not to rely on it for anything other than notice, which was highly relevant, considering that the main defense was I may have represented that I was recognized by the IRS as a 501c3, but I thought that I could, and so when you have various state regulators who are saying, you can't make that representation, that's not accurate, that obviously is pertinent to whether his belief was sincere or reasonable. And then third, on cross-examination, all of the state regulators who were asked at least readily admitted, my job is not to determine whether someone is a 501c3 under the IRS code. I just look and see that they're representing that they have been recognized by the IRS. I go and look at the IRS website, or I call the IRS. I see that they have not yet been recognized, and so I send the cease and desist pointing that out. So I don't think there was any risk that the jury was going to rely on the state regulators to make a determination. And moreover, as I was suggesting first, that really wasn't the question for the jury to decide. It wasn't about whether the jury believed that this, in some sense, was a 501c3. It was whether it was untrue to state that they were recognized as a 501c3. Turning to the Santos merger question, so there are three issues that go into the Santos merger analysis. One has to do with legislative history, and we can see that that doesn't weigh in our favor here. The other two are whether there's a merger problem and whether the money laundering statute radically increases the statutory maximum. Where did that statutory maximum standard come from? I know that it's in this Kratt case, but did it come from the Supreme Court? It did. I think this court's interpretation of Justice Stevens's controlling concurring opinion in Santos is that the Supreme Court isn't worried strictly about money laundering convictions that, in some sense, merge with the predicate offense. It's only worried when there's a merger problem, and that merger problem radically increases the statutory maximum. But why should it matter whether it increases the statutory maximum if they're consecutive sentences? Well, I think the question is, is the defendant going to be punished twice for the same sentence? And here, your opponent says he got 60 months on the money laundering and he got 36 months on the fraud. Both of which are well below even consecutive. But the consecutive sentence is more than doubling, adding more than, well, adding double the amount. That's true. In terms of the guidelines, three years on the mail fraud count, five consecutive to that on the money laundering. I truly don't understand. I mean, and that's why I'm asking you this question. I don't understand why we should care about the statutory maximum. I would think we would care, is count nine adding punishment for the very same conduct that he's already being punished for under count two? Well, I think that's almost always going to be the case. Whenever you have a predicate offense and a money laundering offense, generally the additional conviction for that money laundering offense is going to increase the sentence. It's going to be consecutive? Not necessarily consecutive, but at least it's going to increase the sentence. I can't say that's going to happen all the time, but usually that additional conviction means something for sentencing purposes. And I think what the Supreme Court was getting at in Santos and what this court discussed in Kratt and Jamison is, not only is the defendant's punishment in some sense more severe, but is it more severe in a way that it could not have been absent the money laundering conviction? Here, with a 20-year statutory maximum on mail fraud and wire fraud, even if you just look at this conduct underlying count two and count nine in isolation, the eight-year sentence that it got for that conduct is well below the statutory maximum just for mail fraud. Second, I just note that, as this court pointed out in Buffen, it's not entirely clear how the court conducts the merger analysis. It can be at the categorical level where you compare the elements, or it can be at a more case-specific or fact-specific approach. But I think what's clear from Santos is what the court is really worried about is when the money laundering charge is based on an act that's really just intrinsic to the predicate offense. In Santos, you have an illegal lottery. And of course, just operating an illegal lottery requires you to make payments that promote the ongoing nature of the illegal lottery. And so the court noted that if every single payment that's just part of carrying on the lottery is a promotion money laundering under 1956, then that really creates this merger problem. Whereas... So why isn't that true here? Well, two reasons. One, there's nothing about mail fraud or wire fraud that intrinsically requires a payment of greater than $10,000. Even in this scheme, there were many instances where the fraud was carried on without the payment of $10,000 or more. But wasn't the... And tell me where I'm wrong. Wasn't the conduct involved in the mail fraud the identical conduct that's involved in the money laundering? Not the identical conduct. Certainly, they're related. The mail fraud charge was about the fraudulent mailings to the financial advisor and then to the victim, making all these false representations. The money laundering was about the subsequent payment of a commission, which certainly was generally part of how the operation was carried out, but it's not the same conduct. Was the money laundering charge... This is the approximately $30,000 payment to this one individual. Was that charged in the mail fraud count as well? The payment itself was not part of the mail fraud count. The mail fraud count is the fraudulent mailing. The money laundering... Mailing of what? Of the NFOA promotional documents, installment plan agreements, things like that. But not the mailing having to do with the money laundering? It's not the check itself to the financial advisor. Not the check. No. Okay. So it's... So it's separate conduct then? It's separate conduct. They're related because the financial planner got a commission for making the sale or offering his opinion to his client, but it's not the exact same conduct, no. I've never seen, I don't think, such an odd... Apparently, it's the guideline range that requires each of these sentences to run, or they require each of these sentences to run consecutively. To be honest, Your Honor, I'm not totally sure how that works. I mean, I've just never seen a fraud case, no matter what the amount of fraud, end up with a sentence like this, and I'm having trouble. I think this is the gist of what Judge Moore was having trouble with, how you work with whole consecutive sentencing. And I was just going back to look and kind of try to figure out how we got there, and I'm not exactly sure how we got there. And I think I'm going to have to spend a little more time trying to figure it out. Well, I think you can see in the Court's opinion in Kratt that the Court recognized that trying to rely on Justice Stevens' controlling concurrence makes for a slightly unwieldy analysis. Well, I mean, focusing on the statutory maximum makes some sense, and would mean that in this case there would not be a problem. But the consecutive sentencing creates kind of another concern. Well, I'm not sure that it does, in large part because district courts, of course, have to run consecutive or concurrent, and as this Court's noted, the ultimate sentence is sort of a package deal where each... Well, you would think that, I would have thought that's what it would have been in this case, and I would have thought that it wouldn't have, that there really wouldn't have been a Santos problem. But maybe the particularities of this case, so I was just thinking if we got inside how we got to the end in this case, we might find a better, you know, a clearer answer to the ultimate question. Well, I'd say in some ways this case is maybe an easier case than a lot of the others that preceded it on this Santos question, because in most of the other cases that this Court has dealt with, the underlying... There's only been typically one predicate count of conviction, sometimes two, such that the additional money laundering conviction actually did change the relevant statutory maximum in a meaningful way. And here it changes the actual sentence in a meaningful way. But not the statutory maximum. So if you just look at purely the mail fraud and wire fraud convictions, that's 140 years statutory maximum absent any money laundering convictions, and of course the defendant's sentence was well, well below that. And so I don't think you have the same concern of the defendant getting a sentence that he could not have legally gotten absent this money laundering conviction. Here, even absent money laundering, he could have gotten the same sentence that he received under the statutory maximums just for mail fraud and wire fraud. Can you address the sentencing issues, and in particular the two that there may be concern about, are the organizer or leader of a criminal activity that involved five or more participants, and the amount of the loss calculation? Yes, Your Honor. First on the leadership enhancement, the government presented evidence during sentencing that four other individuals had been indicted in state court for their roles in this same fraudulent scheme. These were the employees? These were the employees. I also know that one of the employees testified at trial that she was corresponding with financial planners based on a script that Mr. Olive had written and was representing that NFOA was a recognized 501c3. Not only did she know that that was not true, she knew that Mr. Olive knew that it wasn't true. And so there are ample grounds to find that there was at least one other knowing participant. And then if you take even just one knowing participant, combine that with the various other participants, that's a combination of the four full-time employees. Don't they have to be potentially criminally responsible? You have to have at least one person who's a knowing participant, and then the combination of knowing and unknowing participants has to be otherwise extensive, which generally means at least five. So you're going under the otherwise extensive as opposed to the five or more participants? That's right. I believe that's the Anderson case, if I'm not mistaken, that talks about the combination of knowing and unknowing participants. So what about your opponent's argument, oral argument, that this jury instruction comment of the district judge shows that there were not four other people who were involved in the criminal activity? Two responses to that. One is I sort of understand counsel to be almost arguing an estoppel-type argument, where once the district court found that the aiding and abetting instruction didn't apply, he was somehow obligated to not apply the leadership enhancement. I don't think there's any basis for any sort of estoppel finding. I'd also note that even if we were to assume that those two findings were inconsistent, I don't think that's true. I'll address that in a moment if I may. But even if they were inconsistent, I think it's just as likely, if not more so, that the district court wrongfully denied the aiding and abetting instruction than it is that he implied the leadership enhancement. But presumably the district judge should have explained why he was imposing the enhancement and given a reason. So what was his reason? Well, we acknowledge that the district court's findings and statement of reason for applying this enhancement was not as thorough as it could have been and as we would have liked. But I think what the standard is... Did he give a reason? No, he just stated the leadership enhancement applies. And the same flaw could be said to be present with respect to the amount of the loss, that he just stated an amount of loss? Yes, Your Honor, although a bit less so there because there was a lot more back and forth where the court was asking about the $6 million figure and referred to the $6 million figure and its restitution findings. And so I think even though there's not a place where the court says, I find that the loss amount was exactly X, he clearly was relying, from context, on the actual loss amount of just under $6 million in applying the $2.5 to $7 million enhancement. So why shouldn't we remand so that the district judge can explain these two key aspects of his sentencing? I think the standard, Your Honor, when the district court fails to make adequate findings supporting an enhancement is not necessarily to remand but to determine de novo whether the record supports the findings. And here I would suggest there's ample evidence in the record to support $6 million actual loss amount and ample evidence to support the leadership enhancements and the vulnerable victim enhancements. Are there any other questions? Thank you, Your Honor. If I can quickly address the organizer and leader very quickly. I'm not arguing an estoppel argument. The government had an opportunity after the jury instruction was denied to introduce additional evidence at sentencing. The government introduced only the state court, dismissed state court indictment, which it now is arguing could amount to a preponderance when the well-known standard for an indictment is probable cause. I think that demonstrates the government's willingness to throw out well-established law for the sake of one case, and this court should reject that. If I could go to the Santos issue, I think that this case is on all fours with Santos. I think the irreducible minimum of Justice Stevenson's concurrence is that you can't be punished twice for the same conduct. And that's exactly what happened here. Your opponent says that it's different, that the money laundering is the payment of the $30,000, whereas the mail fraud is other items. How do you respond to that? I think you have to look at their charging instrument. The indictment includes, as part of count two, that part of the scheme was that Mr. Olive paid highly compensated insurance agents to broker these deals. The payment that was made to the alleged victim in count two is the money laundering charge charged in count nine. This is exactly what you would see in Santos, where the intermediary of the gambling actor paid his intermediaries to then pay off other people. This was part of how the operation of the scheme worked, according to the government. He gets penalized for both paying the broker as part of count two, as part of that scheme, and then he gets paid because he mailed the check to the broker as part of count nine. Can I ask you this? This is a lot. I'll try not to. Time's about to be up, so I'll try to be quick about it. I asked Mr. Vandevender some questions relating to this statutory maximum versus consecutive sentences thing. I guess I want to question you just briefly along the same lines. I was trying to figure out how we got where we ended up in this case. I think we got where we ended up in this case. If I'm reading what I've got here with me correctly, the probation officer recommended these consecutive sentences. There was nothing in this case that precluded the district court from deviating from that. It wasn't like a statutory consecutive sentence requirement, but ordinarily, if the court wanted to vary or the court decided not to follow the probation officer's recommendation, the court would just have looked at these possibly as a single, you know, guideline is life. I'm going to go less than life. Here's where I'm going to go to, but the district court, for whatever reason, continued this consecutive sentence deal, although it wasn't required to do so. If we focus on that fact, as opposed to what happened with the statutory maximum in this case, which would arguably take your client out of the whole Santos crap thing, then arguably we've just based a decision, not on the fundamentals of what happened, but just on the peculiarities of how the district court structured the sentence. Is that a fair? I mean, you probably don't agree with that, but is there anything factually inaccurate that I've said in describing what happened? I'm asking for informational purposes. Sure. Let me respond and try to be as brief as I can. I think, well, I don't think, the reason why the 160 sentences was calculated is because of the function of the guidelines. The guidelines were- The court, this was not a statutorily required, and the court did have the ability to depart from those guidelines, as the court, in fact, did in imposing sentence. I think the court continued to do that because I think the court was required to establish what the guideline range was before then moving on to the 3553 factors to then address those. So I think that the court continued along that paradigm in order to reach what the guideline sentences were before it can move on to the 3553 factors, and I think the court was required to do that. And the guideline factors require consecutive. Is that right? I'm asking- Yes, Your Honor. They do. Does that answer the question? I think so. Okay. I see that my time is up for the reasons argued here and in the briefs. Mr. Alwood, I ask this court to reverse and remand. Thank you. Thank you both for your argument. The case will be submitted with the clerk.